MEIER ET AL., APPELLEES, *v*. PEIRANO ET AL., APPELLANTS.

(No. 6445—Decided January 15, 1945.)

*Mr. John M. McCaslin,* for appellees.

*Miss Jule Laughlin, Mr. Bert H. Long* and *Mr. Milton M. Bloom,* for appellants.

DOYLE, J. There is presented to this court for review a judgment of the Court of Common Pleas of Hamilton county (based upon a verdict of a jury), which set aside and invalidated a paper writing which purported to be the last will and testament of Louis S. Peirano, deceased. The jury found and the judgment

reflected that the deceased was without the required mental capacity to dispose of his property by will. The question decided was the sole issue in the case.

No attempt will be made to discuss the claimed errors in the order presented. Attention will be directed, however, to some of them which we believe dispositive of the appeal.

1. The appellants assert that the trial court erred in excluding from the consideration of the jury the testimony of Dr. Joseph DeCourcy, who had treated the deceased for years prior to the making of the will, and up to and including his last illness, that the deceased was a man of sound mind. A part of the testimony follows:

"Q. Now, doctor, from your contact with Louis Peirano over these years, the visits that you have described, I want you to state whether or not, in your opinion, he was a man who had sufficient mind and memory to understand the nature of the business in which he was engaged? * * *A. Yes, sir.

"Q. I will ask you to state whether he had sufficient mind and memory to comprehend generally the nature and extent of his property? * * * A. Yes, sir.

"Q. And whether he had sufficient mind and memory to hold in his mind the names and identity of those who have natural claims on his bounty? * * * A. Yes, sir.

"Q. And I will ask you next, doctor, whether he had sufficient mind and memory to be able to appreciate his relation to the members of his family? * * * A. Yes, sir. * * *

"Q. Doctor, in your opinion, was he a man of sound or unsound mind? * * * A. I would say a sound mind. I have no reason to believe he was of unsound mind."

The record reveals that the doctor had never treated the patient for nervous or mental disorders and that he had observed his patient frequently in a non-

professional capacity. On this point I here give several of the many statements of the doctor which reveal his general observation of the deceased:

"Oh, he would just come in, talk about the weather and different things. He used to be around that neighborhood quite a bit for some reason or other, I don't know why. I frequently met him on the street."

"Q. Did you ever discuss current events with him or any matters of that kind? A. Yes, sir, I would say in the general course of conversation."

Without going into further detail, it may be properly said that the doctor knew his patient well, not only in a professional but in a nonprofessional capacity.

The trial court seemed to predicate the order of exclusion upon provisions of the General Code of Ohio and the following question and answer of the doctor on cross-examination:

"Q. Other than your professional contacts and communications with him, that is, physical or oral communications with him in the relationship of physician and patient, you would not have—if you eliminated that—you would not have a sufficient basis to express an opinion as to his soundness or unsoundness of mind, would you? A. No, I would say no."

Section 11494, General Code, in part provides:

"The following persons shall not testify in certain respects:

"1. * * * a physician, concerning a communication made to him by his patient in that relation, or his advice to his patient. * * *"

The above statute has been construed to mean "that a communication by the patient to the physician may be not only by word of mouth but also by exhibiting the body or any part thereof to the physician for his opinion, examination or diagnosis, and that that sort of communication is quite as clearly within the statutes as a communication by word of mouth." *Ausdenmoore*

*et al., Exrs.,* v. *Holzback,* 89 Ohio St., 381, 106 N. E., 41. And, see, *Baker* v. *Industrial Comm.,* 135 Ohio St., 491, at p. 496, 21 N. E. (2d), 593.

It would appear from the wording of the statute that, when the words "in that relation" were used, the Legislature intended to follow the generally accepted doctrine that the "communication" must be made to the doctor *in his professional capacity at the time.* And the professional capacity at the time has to do only with communications which have a relationship to an examination, diagnosis or treatment of the particular malady or maladies which brought about the relationship. The relationship in the instant case had no connection with a mental disorder.

In support of the conclusion that the evidence is admissible, reference is made to a decision of the Supreme Court of Ohio. In that case an insurance company sought to show that an insured was not "in sound health" at the time of the issuance of an insurance policy upon her life, by offering as its witness a doctor who had examined and treated the insured. I here quote, from the opinion (at p. 620), the evidence there under consideration:

"Q. From your treatment of Mrs. Sarah Howle, and the facts you have testified to, what do you say was her state of health * * *? A. She was not in sound health on that day. Q. You may state what was her condition on that day. Objected to; objection sustained. Q. What, if anything, did you prescribe for her, if you remember * * *? Objected to; objection sustained."

The opinion then observes:

"In each instance the defendant company by its counsel excepted, and stated what the answer would be, and the same was in each instance pertinent and competent. The evidence so offered was not a communication by the patient to the physician, but was as to the independent knowledge of the physician, and was

clearly competent, and the court erred in excluding the same.''

*Metropolitan Life Ins. Co.* v. *Howle,* 68 Ohio St., 614, 68 N. E., 4.

It appears in the above case that the statute was invoked by the objector, and that it was in identical form with the one in force at the time of the present controversy. It further appears that the doctor was one engaged by the insured and not by the insurance company.

In further support of our conclusion, the following cases are cited: *Bahl* v. *Byal,* 90 Ohio St., 129, 106 N. E., 766 (decided subsequent to *Ausdenmoore et al., Exrs.,* v. *Holzback, supra*), and *Heiselmann* v. *Franks,* 48 Ohio App., 536, 194 N. E., 604.

The second paragraph of the syllabus of *Bahl* v. *Byal, supra,* is in the following terms:

''2. It is competent for the physician of a testator to express an opinion as to the actual condition of his patient's mind, founded on his study and observation of the testator while in professional attendance on him at the time and prior to the date of the will, and whether he was capable of comprehending large and complicated business propositions or the distribution of a large estate.''

In terminating the discussion of this assignment of error, it is observed that if the deceased had communicated with the doctor for examination, diagnosis or treatment of a mental disorder, the privilege might be invoked, but that when the only purpose of such communication was for examination and treatment of bodily ailment, and related in no way to a mental condition, the privilege cannot be invoked by the contestants in a will contest case who seek to disprove the capacity of a testator to make a will.

On this general subject see VIII Wigmore on Evidence (3rd Ed.), Section 2380 *et seq.*

2. The testator left his property in the challenged will to his three nephews, who were residents of Columbus, Ohio, and excluded his two nieces, who are the present contestants. The above-mentioned five nephews and nieces were his only next of kin.

The will provided:

"All of the property of whatsoever kind and description which I may own or have the right to dispose of at the time of my decease, I give, devise and bequeath absolutely and in fee simple in equal portions to my three nephews, Stephan Peirano, Frank L. Peirano and Walter Peirano, who are all at this time residents of Columbus, Ohio, and to the survivors or survivor of them at the time of my death."

It is admitted that the given name "Walter" is an error and that the third nephew's name is Albert.

In view of this error in the given name, the proponents requested and the court refused to charge, before argument, the following proposition of law, to which exception was taken:

"I charge you as a matter of law that it is not the actual remembering of the names of those who have natural claims upon one's bounty, but the capacity and ability to remember such persons, and if you find from all the evidence that Louis Peirano, at the time he drew his will, did possess such capacity to remember such persons, then the said Louis Peirano was possessed of testamentary capacity in such respect."

However, at the request of the contestants, and over the objection of the proponents, the following charge was given to the jury before argument:

"Members of the jury, I charge you that according to the law of Ohio, mental capacity sufficient to enable a person to make a will only exists when the person making a will has sufficient mind and memory—

"First: To understand the nature of the business in which he is engaged;

"Second: To comprehend generally the nature and extent of his property;

"Third: To hold in his mind the names and identity of those who have natural claims upon his bounty; and

"Fourth: To be able to appreciate his relation to the members of his family.

"If you find from all of the evidence that Louis S. Peirano, on April 24, 1943, did not have sufficient mind and memory to meet any *one or more* of the foregoing four tests, then he would be deemed *not* to have testamentary capacity, and it would be your duty in such event to render a verdict for the plaintiffs, holding the paper writing submitted in evidence was not the last will and testament of Louis S. Peirano." (Italics ours.)

It is apparent from the foregoing that the case of *Niemes v. Niemes,* 97 Ohio St., 145, 119 N. E., 503, was the subject of interpretation and application by counsel and the court.

The fourth paragraph of the syllabus of this famous will case provides:

"4. Testamentary capacity exists when the testator has sufficient mind and memory:

"First, to understand the nature of the business in which he is engaged;

"Second, to comprehend generally the nature and extent of his property;

"Third, to hold in his mind the names and identity of those who have natural claims upon his bounty;

"Fourth, to be able to appreciate his relation to the members of his family."

While the *Niemes case* holds that one possesses testamentary capacity who has sufficient mind and memory to be able to meet the four tests specifically set forth, it does not hold, nor does it logically follow, that one does not possess testamentary capacity who has forgotten the correct first name of a nephew, but

at the same time has properly designated him as one of his only three nephews "who are all at this time residents of Columbus, Ohio." A valid bequest may be made to the members of a family of a person without specifically designating each individual. And in the instant case the mere designation of his only three nephews would have been sufficiently definite and certain without attempting to name them.

In view of the facts of this case and the giving of the contestants' request to charge before argument, we determine that it was prejudicial error not to have given the request of the proponents. The mere failure to correctly remember a given name is not sufficient to create the incapacity; and especially is this true where the testator did remember the surname of the beneficiary and his address, as was the case here.

While a temporary failure of memory might exist, nevertheless the solid power of understanding may remain. The law looks primarily to the competency of the understanding. Bearing in mind these legal concepts, the charge requested by the proponents became especially pertinent to explain to the jury the legal significance of the *Niemes case*.

As we view the charge given on this subject at the request of the contestants, the court, in the giving thereof, went far beyond the holding in the *Niemes case*. It is not correct to say that "mental capacity sufficient to make a will *only* exists" when the four tests are met, and then to say in the same charge that testamentary capacity does not exist if the testator "did not have sufficient mind and memory to meet *any one or more* of the foregoing tests." The effect of the charge as given under the circumstances of this case, was to lead the jury to believe that, if a testator could not remember the given name of one of his beneficiaries, although he did properly remember the surname,

address and relationship, this fact was sufficient to invalidate the will.  Of course such is not the case.  The fact is only an item of evidence to be considered in determining mental capacity.  It would be absurd to claim that the mental capacity of a testator is controlled by the testator's inability to remember the given name of one of his beneficiaries.

3. It is alleged that the court erred in failing to properly charge the jury on the burden of proof.

The rule is:

"In an action to contest a will, the jury should be instructed that, before it would be justified in setting aside a will, the evidence tending to invalidate the will must outweigh both the evidence tending to sustain the will and the presumption arising from the order of the probate court admitting the will to probate as the valid last will and testament of the testator.  Instructions should not limit the determination of such issue to the evidence introduced by either party exclusively, but the issue should be determined by the preponderance of all the evidence adduced in the case, regardless of which party may have called a witness or adduced the evidence."

*Van Demark* v. *Tompkins, Exr.*, 121 Ohio St., 129, 167 N. E., 370.

And further:

"In a will contest, by virtue of the statute, the burden of proof is cast upon the contestant of the will and such burden never shifts from him * * *."

*Kennedy, Exr.*, v. *Walcutt*, 118 Ohio St., 442, 161 N. E., 336.

While the charge given by the court did not *in terms* pronounce the above rule, we do not find that prejudicial error exists in the respects claimed.  In a retrial of this case, the above rules should be carefully followed, as they set forth the last pronouncement of the court of last resort in this state on the subject.

4. We do not find that the court erred "in overruling defendants' motion for a directed verdict at the conclusion of the entire case," or "in overruling defendants' motion for a judgment in their favor notwithstanding the verdict of the jury."

We are of the opinion that the errors noted above were prejudicial and tended to influence the jury into returning a verdict in favor of the contestants. It is the opinion of the writer of this opinion that the evidence in the record fails to justify under any circumstances the verdict rendered. However, in view of the fact that the case must be retried, we find it unnecessary to pass upon the remaining charges of error, which include the weight of the evidence.

The judgment is reversed and the cause remanded.

*Judgment reversed and cause remanded.*

STEVENS, P. J., and GUERNSEY, J., concur.

STEVENS, P. J., and DOYLE, J., of the Ninth Appellate District, and GUERNSEY, J., of the Third Appellate District, sitting by designation in the First Appellate District.