JOURNAL ENTRY AND OPINION
Plaintiff-appellant Susan Iler appeals from the jury's decision to award her zero damages in her personal injury action against defendant-appellee Audley Wright. The appellant was injured as a result of a rear-end motor vehicle collision and negligence was stipulated between the parties.
November 30, 1999 was a snowy day, and after pumping her brakes once or twice, Ms. Iler, who was traveling south on Lee Road towards the Shaker Heights Library, was able to completely stop her minivan at a traffic light. Ms. Iler heard a thunk and then remembers seeing the street light as her head went back, and her hand, as her head came forward again. Ms. Iler realized that she had been struck from behind and she exited her vehicle to speak to the appellant, who was the driver of the vehicle which struck her.
The police were telephoned, but were unable to come to the scene. The appellant and the appellee proceeded to the police station and gave their statements. Ms. Iler stated that the appellee did not enter the police station until an officer came out to see him. She testified also that she heard the appellee inform the officer that he thought he was traveling at two miles per hour (mph). According to Ms. Iler, she informed the officer that this was not true, but the officer proceeded to write the appellee's speed as 2 mph on the report. Ms. Iler stated that the appellee did not inquire as to her injuries; that she never stated to the police officer that she was not injured; and that she did not refuse treatment. During the course of the police interview, the officer inquired as to whether anyone was injured, Ms. Iler testified that she responded no, but that her neck was stiff.
On November 30, 1999, the appellee was driving southbound on Lee Road headed towards Miles. He had just dropped his son off at school. He was approximately three to four car lengths behind the minivan and was driving approximately twenty-five mph. When he applied the brakes the car slid a little bit, but slowed down to approximately five mph or less. There was no observable damage on his vehicle. The appellee testified that he did indeed delay entering the police department, but that was because he was trying to contact his insurance company on his cell phone. Mr. Wright testified that the police officer inquired as to whether anyone was injured; that the appellant answered in the negative; and that the appellant refused an ambulance. The appellee stated that he and Ms. Iler were interviewed separately and that she was not present when the officer inquired as to his rate of speed. Mr. Wright testified that when he struck Ms. Iler's van it jerked, but it did not move. During cross-examination, the appellee explained that he did not remember the exact words he used when speaking with the police officer, but that he was traveling at a rate of 2 mph or 5 mph.
The appellant presented the testimony of James Crawford, a qualified accident re-constructionist. Mr. Crawford testified that although this was a low impact collision, the appellant suffered injury. The damage visible to the bumper on the outside of the minivan was slight, but the left side mounting bracket attaching the bumper to the vehicle's frame was in the shape of a W instead of straight. Mr. Crawford opined that because Ms. Iler's vehicle was hit slightly at an angle, the force was greater on the driver's side of the vehicle. Mr. Crawford indicated that the appellant's headrest was below her occipital lobe.
The expert concluded that the van was pushed forward and the seat pushed Ms. Iler's body with it. Because the her head was not directly against the headrest, Ms. Iler's head remained stationary while her body moved out from underneath her head. Generally, a driver's head will remain stationary until it makes contact with the headrest, but in this instance the headrest was too low. The result was a full throw of her neck. And then her head would be whipped forward as it is being pulled in the car. It would be accelerating out from underneath her. (T. 66). Mr. Crawford testified that based upon his calculations the appellee would have been traveling between eleven and fifteen mph when he struck the appellant.
Mr. Crawford presented a short film produced by his company as a staged crash. This rear-end crash was filmed at Texas A M in 1997 and depicted a crash between a Nissan Ultima and a Pontiac 6000. The speed of the striking vehicle was just over 8 mph.
On cross-examination, appellee's counsel elicited the response from Mr. Crawford that he was first contacted by the appellant on December 7, 1999, approximately a week after the accident. Mr. Crawford was also closely cross-examined regarding the film he presented. Crawford testified that the driver in the film was not injured; that it was not snowing in Texas when the film was made; and that the vehicle contained a different headrest. In contrast to the vehicle depicted in the film, which was knocked off the screen, Mr. Wright testified that the appellant's vehicle merely jerked. The repair bill for the appellant's vehicle was a total of $551.53, of which $348.30 was the charge for labor.
Dr. Robert Fumich, the appellant's treating physician, testified that he first saw the appellant on December 14, 1999. The appellant was referred to him by Dr. Bonomo[1]. Dr. Fumich testified that the medical history indicates that appellant was seen by the Urgent Care Center. Later Dr. Bonomo x-rayed the appellant's neck. The appellant complained of neck pain with occasional numbness and burning with radiation into the shoulders and down into the elbows. Dr. Fumich's examination revealed that the appellant had spasm to the neck with a slight gibbous which is a flexed forward position of the neck. Her upper extremity reflexes were all normal, two plus and equal. Strength was normal for all muscle groups as was sensation, pulses were normal. She had full flexion/extension. She had pain on extension. She had decreased rotation and lateral bending bilaterally. She had full active and passive motion to the shoulders or to the right shoulder. She had full passive and active motion to the left shoulder with some crepitation[2] in the shoulder. (Fumich Depo. T. 13). Ms. Iler was diagnosed with cervical myofascitis, which is an inflamation of the muscles and soft tissue supporting the neck. (Fumich Depo. T. 19). Dr. Fumich testified that the appellant's injuries were related to the accident and that there was a degree of permanency with the injuries. The appellant was placed on an anti-inflammatory and prescribed physical therapy. The appellant returned to Dr. Fumich on June 27, 2000. At this point the appellant had some tenderness and tightness in the neck and some spasm. The motion was relatively good. (Fumich Depo. T. 23). The appellant attended five physical therapy sessions between December 29, 1999 and February 2, 2000. At that point the records indicate that the patient stated she had no pain and felt much better.
When discussing the appellant's future, Dr. Fumich opined that the appellant's need for care was somewhat difficult to sort out. I believe that the home exercise program that she is doing is benefitting her. She'll use anti-inflammatories from time to time. She'll have episodes of activity where her neck may become painful and it's the type of activity where you may not know whether it's the specific activity alone or the accident or some combination and how to sort it out, you'll never be able to sort it out, but she will have some activities where she'll have a problem for which she'll take some medication and she'll continue her home exercise programs. (Fumich Depo. T. 27-28). The doctor also testified that the appellant had some arthritis prior to the accident. This arthritis is what confuses the issue of whether her future pain would be a natural progression or due to the accident.
On cross-examination, Dr. Fumich agreed that his records indicate that the appellant made her second visit to his office, the visit of June 27, 2000, after she developed neck spasms from carrying luggage into her home after vacation (Fumich Depo. T. 33). Dr. Fumich also testified in more depth as to the nature of the appellant's arthritis, that it is a progressive condition and that it was not caused by the accident. The spurring observed on the x-rays of C3, C4, and C5 vertebrae preexisted the accident. When asked specifically whether the pain the appellant expressed on June 27, 2000 was the result of the accident, Dr. Fumich responded that it would be impossible to sort out what percent of the pain was attributable to the accident and what was attributable to the preexisting condition. His medical opinion is that Ms. Iler will have future intermittent episodes, but that these episodes will not be more significant than the episodes she has already experienced. Finally, appellee asked Dr. Fumich whether, in the absence of the accident, Ms. Iler would, with the continuing progression of her degenerative cervical disease, have complaints regardless of the accident. Dr. Fumich opined that it was possible.
The appellant sets forth four assignments of error and they will be addressed in reverse order.
In the fourth assignment of error, the appellant asserts that the trial court erred in granting the motion of the appellee for judgment on the pleadings and thereby terminating the appellant's claim for bad faith against the appellee's insurance company. The appellant challenges this court to review our previous decision entered in Chitlik v. Allstate Ins. Co. (1973), 34 Ohio App.2d 193, 299 N.E.2d 295, paragraph one of the syllabus, which found that an injured person is not a third-party beneficiary of a liability insurance contract between an insurer and its insured and may not sue the insurer under that theory. This court is not persuaded that our holding in Chitlik is incorrect. As we recently stated in Tanoh v. Strawbridge (May 18, 2000), Cuyahoga App. No. 76094, a standard liability insurance policy is not a contract for the benefit of a third person. The contract is made with the intention of benefitting the insured, not someone whom he injures. See Reynolds v. Lake Mohawk Property Owners' Association, Inc. (March 31, 1989), Carroll App. No. 552.
The appellant's fourth assignment of error is not well taken.
In the third assignment of error, the appellant argues that the trial court erred in denying appellant's motion in limine to preclude appellee from disputing proximate cause of damages without submitting an expert report. As the appellee points out, in an action for negligence, the plaintiff bears the burden of proof to demonstrate each element by a preponderance of the evidence. Jeffers v. Olexo (1989), 43 Ohio St.3d 140,143. A jury is not required to accept evidence simply because it is uncontroverted, unimpeached or unchallenged. Bradley v. Cage (Feb. 27, 2002), Summit App. No. 20713, citing to Ace Steel Baling v. Porterfield (1969), 19 Ohio St.2d 137, 249 N.E.2d 892. A jury is free to believe all, part, or none of the testimony of any witness who appeared before it. Rogers v. Hill (1998), 124 Ohio App.3d 468, 470, 706 N.E.2d 438.
Likewise, evidence tending to prove a fact does not necessarily become uncontroverted or uncontested simply because an opposing party does not present rebuttal evidence. Wilhoite v. Kast (Dec. 31, 2001), 2001-Ohio-8621 Warren App. No. CA2001-01-001, citing to Collins v. Collins, 2001-Ohio-8701, (Oct. 15, 2001) Clinton App. No. CA2000-09-023; Glick's Furniture v. Franklin Cty. Bd. of Revision (Mar. 18, 1997) Franklin App. No. 96APH07-847. A party may contest proffered evidence through cross-examination. Stinson v. England (1994), 69 Ohio St.3d 451,455-56, 633 N.E.2d 532. When an opposing party does not rebut proffered evidence with its own evidence, the trier of fact is not required to accept the proffered evidence as credible. Kolomichuk v. Grega (Sept. 20, 2001), Cuyahoga App. No. 78870, citing to GTE North, Inc. v. Carr (1993), 84 Ohio App.3d 776, 780, fn. 3, 618 N.E.2d 249.
In the matter now before this court, the appellee chose not to obtain his own expert witnesses, but rather chose to contest the appellant's evidence through cross-examination. This court will not second guess the trial tactics of counsel where such tactics are not prohibited, and indeed, are sanctioned in the case law.
The third assignment of error is overruled.
In her second assignment of error, the appellant asserts that the jury's verdict was against the manifest weight of the evidence. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279. Questions of fact are best left to the trier of fact. Complete Gen. Constr. Co. v. Ohio Dept. of Transportation, 94 Ohio St.3d 54; 2002-Ohio-59; 760 N.E.2d 364. It has long been held that factfinders are generally charged with drawing reasonable inferences from established facts, and that they view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Mid-America Tire, Inc. v. PTZ Trading Ltd., 95 Ohio St.3d 367; 2002-Ohio-2427; 768 N.E.2d 619, citing to Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment most favorable to sustaining the verdict and judgment. Seasons Coal, supra.
When applying this standard to the case sub judice, it is clear that the jury's verdict was not against the manifest weight of the evidence. There is no question but that this was a low speed and low-impact collision which resulted in minimal property damage. The jury heard evidence that the appellant informed the police that she was not injured and she refused an ambulance. The appellant chose to present a film of a collision made by her expert witness. In the film, the collision occurred at a greater speed than the appellant's collision and yet the driver walked away unharmed. In the film, the vehicle which was struck from behind was knocked off the screen. In the collision between the appellant and the appellee, the appellee testified that the appellant's vehicle merely jerked. The appellant testified that the appellee refused to enter the police station. The appellee responded with a logical explanation, that he was contacting his insurance company. Dr. Fumich testified that the appellant had a preexisting degenerative condition and that it would be impossible to differentiate the pain the appellant might experience from the accident and the pain from the arthritis. While the appellee presented no expert testimony, the appellant's experts were indeed challenged through cross-examination. Thus, the jury was presented with evidence requiring assessment of the weight of that evidence and then rendered its decision. The jury's verdict was supported by competent credible evidence and it will not be reversed this court.
The second assignment of error is overruled.
In the first assignment of error, the appellant argues that the trial court erred in denying his motion for a new trial. The appellant requested that the trial court grant a new trial because he believes the verdict is not supported by the manifest weight of the evidence pursuant to Civ.R. 59(A)(6).
The granting or denial of a motion for a new trial is within the sound discretion of the trial court. Mannion v. Sandel, 2001-Ohio-47;91 Ohio St.3d 318; 744 N.E.2d 759; Sawyer v. Duncan (Dec. 14, 2000), Cuyahoga App. No. 78056, citing to Verbon v. Pennese (1982),7 Ohio App.3d 182, 454 N.E.2d 976. In Rhode v. Farmer (1970),23 Ohio St.2d 82, 262 N.E.2d 685, at syllabus three, the court held in part that in ruling on a motion for new trial upon the basis of a claim that the judgment `is not sustained by sufficient evidence,' the court must weigh the evidence and pass upon the credibility of the witnesses, not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury but in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence. A judge should abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. Sauto v. Nacht (April 16, 1998), Cuyahoga App. No. 73118, citing to Bland v. Graves (1993), 85 Ohio App.3d 644, 620 N.E.2d 920.
In order to set aside a damage award as inadequate and against the manifest weight of the evidence, an appellate court must determine that the verdict is so gross as to shock the sense of justice and fairness, cannot be reconciled with the undisputed evidence in the case, or is the result of an apparent failure of the jury to include all the items of damage making up the plaintiff's claim. Kolomichuk v. Grega (Sept. 20, 2001), Cuyahoga App. No. 78870, citing to Dillon v. Bundy (1991),72 Ohio App.2d 767, 596 N.E.2d 500. Uncontroverted medical testimony is not dispositive of a case as it is only admissible to assist the jury in determining the ultimate facts of the case. Id., citing to Reder v. Antenucci (1989), 62 Ohio App.3d 139, 574 N.E.2d 1137. As noted in the second assignment of error, uncontroverted evidence does not necessarily require the trier of fact to accept an argument advanced by a party. GTE North, Inc. v. Carr (1993), 84 Ohio App.3d 776, 780, fn. 3, 618 N.E.2d 249. Damage awards are particularly within the province of the jury, and mere disagreement with the jury verdict does not warrant setting aside the verdict. Wooley v. Farmer Jones Farms (Oct. 19, 2000), Cuyahoga App. No. 77232.
As noted in the second assignment of error, the jury's verdict was not against the manifest weight of the evidence. It bears repeating that the expert testimony of Dr. Fumich was contested through cross-examination. Through the evidence elicited on cross-examination, the jury learned that the appellant has a degenerative disease which may be the source of her future pain. The jury also learned that the appellant was seen by Dr. Fumich once for the accident and once, several months later, because she was injured carrying luggage. Contrary to the appellant's assertion, the evidence was contradicted and uncertain and the jury was free to believe all, part of, or none of the appellant's witnesses. This court finds no abuse of discretion in the trial court's denial of the appellant's motion for a new trial.
The appellant's first assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
ANN DYKE, J., and TERRENCE O'DONNELL, J., CONCUR.
[1] Ms. Iler testified that Dr. Bonomo is her family physician.
[2] Dr. Fumich testified that crepitus is crunching and grinding (Fumich Depo. T. 18).