The STATE ex rel. SHELTON et al., Appellants,

v.

FIREMEN AND POLICEMEN'S DEATH BENEFIT FUND et al., Appellees.

[Cite as *State ex rel. Shelton v. Firemen & Policemen's Death Benefit Fund* (1997), 125 Ohio App.3d 559.]

Court of Appeals of Ohio,
Ninth District, Lorian County.

No. 97CA006677.

Decided Nov. 26, 1997.

*Daniel D. Mason,* for appellants.

*Betty D. Montgomery,* Attorney General, and *Stephen H. Johnson,* Assistant Attorney General, Business and Government Regulation Section, for appellees.

Reece, Judge.

Appellants Jane Shelton and Geraldine Franko appeal from the judgment of the Lorain County Court of Common Pleas. We affirm.

I

Appellant Jane Shelton is the widow of Earl Shelton, a fireman who died in the line of duty. At the time of her husband's death on August 25, 1982, they had two children under the age of eighteen. Soon after her husband's death, Shelton and her children began receiving death benefits from the Fireman and Policemen's Death Benefit Fund ("the Fund"), which pays benefits to the families of member policemen and firemen who die in the line of duty. Shelton and her two children each received one-third of the benefit payment. Shelton's two children eventually became ineligible to receive benefits; however, Shelton did not receive a corresponding increase in benefits.

Appellant Geraldine Franko is the widow of Michael Franko, who died in the line of duty as a police officer on July 26, 1976. At the time of her husband's death, they had one child under the age of eighteen, a daughter from her husband's previous marriage. Franko and her stepdaughter each received one-half of the benefit payment from the Fund until the stepdaughter became ineligible. Thereafter, the stepdaughter's payments ceased, but Franko's benefits did not increase commensurately.

On June 16, 1993, the Supreme Court of Ohio decided *Roseman v. Firemen & Policemen's Death Benefit Fund* (1993), 66 Ohio St.3d 443, 613 N.E.2d 574. The plaintiff in *Roseman*, like appellants in the case at bar, was the widow of a member of the Fund whose benefit payments did not increase after the plaintiff's children became ineligible to receive payments. R.C. 742.63(H) prohibited the recalculation of benefits to be paid to a deceased Fund member's spouse once other dependents became ineligible. The court held that R.C. 742.63(H) violated the Equal Protection Clauses of the Ohio and United States Constitutions. *Id.* at syllabus. The court reasoned that the statute unjustifiably discriminated against spouses of decedent Fund members who had children at the time of the member's death. *Id.* at 451, 613 N.E.2d at 580.

As a result of the *Roseman* decision, it became incumbent on the Fund to readjust the benefits paid to benefit recipients such as appellants. The Fund's Board of Trustees decided that readjusted payments would be made in the future to the spouses of deceased Fund members whose children later became ineligible. The board of trustees also decided that retroactive payments would be made for the six years preceding the *Roseman* decision; no retroactive payments would be made for periods more than six years past.

After the *Roseman* decision, Shelton sought retroactive payments from the Fund. The Fund did not make any retroactive payments to Shelton before she filed suit on March 25, 1994. Shelton sued the Board of Trustees of the Fund, as well as the individual trustees and the directors of the Fund (collectively, "the Fund officials"), in their individual and official capacities. She also sued the Fund. Shelton alleged, *inter alia*, that the Fund's denial of retroactive payments violated Section 1983, Title 42, U.S.Code; Shelton's suit also sought attorney fees and punitive damages. Shelton sought to maintain the suit as a class representative on behalf of other spouses of deceased Fund members who would be entitled to retroactive payments under *Roseman*.

As part of discovery, Shelton sought to have the Fund disclose the names of those persons eligible to be members of the class. The Fund refused, arguing that R.C. 742.41(B) prohibited such disclosure. Shelton moved to compel the Fund to disclose the information; the Fund sought a protective order to prohibit disclosure.

At some point in time, the Fund paid Shelton the retroactive payments that she sought. The Fund and the Fund officials thereafter moved to dismiss the action and opposed class certification, arguing that Shelton could no longer be an adequate class representative or maintain the action, because she had been made whole. Shelton opposed the motion, arguing that she was still entitled to longevity pay increases and interest on the amount that the Fund had withheld. Shelton also moved to file an amended complaint, naming Franko as a plaintiff and a new class representative.

The trial court treated the motion filed by the Fund and the Fund officials as a motion for summary judgment, to which neither party objected. On January 3, 1997, the trial court ruled on the motions pending before it, granting the defendants' motion for summary judgment in part, denying class certification, and granting defendants' protective order. The trial court also granted Shelton's motion to file an amended complaint and denied her motion to compel.

In ruling on the motion for summary judgment, the trial court held that the Fund officials, being sued in their individual capacities, were entitled to qualified immunity from suit under Section 1983. The court also dismissed the Section 1983 claim against the Fund and the Fund officials in their official capacity, the claim for attorney fees, and the claims for punitive damages against the Fund officials. The trial court denied summary judgment on Shelton's other claims for a writ of mandamus and for injunctive relief, which remain pending below.

The trial court's decision on the discovery issue hinged on R.C. 742.41(B). The trial court held that the names sought by Shelton were privileged under the statute and therefore not discoverable. Consequentially, Shelton could not make

a sufficient showing of the numerosity requirement for class actions under Civ.R. 23(A)(1), and class certification was denied. This appeal followed.

## II

Appellants assert three assignment of errors. We discuss each assignment, addressing the second assignment of error first because it is central to the determination of the first assignment.

### A. Second Assignment of Error—Discovery Motions

Appellants first argue that the trial court improperly granted the protective order and denied their motion to compel.[1] In their motion to compel, appellants sought the names and addresses of other benefits recipients who might be entitled to retroactive payments as a result of the *Roseman* decision. In denying the motion to compel and granting the protective order, the trial court reasoned that the information sought was not discoverable under Civ.R. 26(B)(1) because it was privileged. The trial court based its reasoning on the fact that R.C. 742.41(B) prohibited such information being "open for public inspection." Appellants contend that the information is not privileged. We disagree.

A trial court has broad discretion in regulating discovery, which we will not disturb unless the trial court abuses its discretion. *Bland v. Graves* (1993), 85 Ohio App.3d 644, 659, 620 N.E.2d 920, 929–930. An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142. When applying the abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Freeman v. Crown City Mining, Inc.* (1993), 90 Ohio App.3d 546, 552, 630 N.E.2d 19, 23. Instead, a reviewing court should be guided by a presumption that the trial court was correct. *State v. Coppock* (1995), 103 Ohio App.3d 405, 411, 659 N.E.2d 837, 841.

Civ.R. 26(B)(1) allows discovery on "any matter, not privileged." "Privilege must rest upon some specific constitutional or statutory provision." *State ex*

---

1. Ordinarily, a discovery order, in and of itself, is not a final appealable order under R.C. 2505.02. See *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83, paragraph seven of the syllabus. Conversely, discovery orders are " 'an adjunct to be [*sic* ] a pending lawsuit,' " *id.* at 438, 639 N.E.2d at 96, quoting *Kennedy v. Chalfin* (1974), 38 Ohio St.2d 85, 89, 67 O.O.2d 90, 92, 310 N.E.2d 233, 235–236, and may be reviewed when the action in which the order was issued is appealed. The discovery order in the case at bar is the basis for its denial of class certification, which is a final appealable order. See *Klocke v. A & D Ltd. Partnership* (1993), 90 Ohio App.3d 317, 318, 629 N.E.2d 49, 49–50. Therefore, we treat the protective order as adjunct to the denial of class certification and review it as a final appealable order.

*rel. Grandview Hosp. & Med. Ctr. v. Gorman* (1990), 51 Ohio St.3d 94, 95, 554 N.E.2d 1297, 1299. Appellees argue that R.C. 742.41(B) is a specific statutory provision that creates a privilege.

R.C. 742.41(B) states:

" * * * The records of the board [of trustees of the Fund] shall be open for public inspection except for the following, which shall be excluded, except with the written authorization of the individual concerned:

"(1) The individual's personal history record;

"(2) Any information identifying, by name and address, the amount of a monthly allowance or benefit paid to the individual."

"Personal history record" is defined in R.C. 742.41(A)(2) and includes the name, address, and other personal information of benefit recipients. Four exceptions to the rule stated in R.C. 742.41(B) are found in R.C. 742.41(E), but appellants do not assert that any of those exceptions apply here.

■ Appellants argue that a statutory privilege cannot exist, because the word "privilege" does not appear in R.C. 742.41(B). Many statutory privileges explicitly mention the word "privilege." See, *e.g.,* R.C. 2305.251 (privilege for proceedings and records of hospital review committees) and R.C. 2317.02 (establishing nine different privileges, including attorney-client and physician-patient). However, not all statutes granting a privilege use that word. See, *e.g.,* R.C. 2739.04 (television and radio reporter's privilege) and R.C. 2739.12 (newspaper reporter's privilege). We believe that R.C. 742.41(B) establishes a privilege pertaining to the personal information of persons who are members of, or receive benefits from, the Fund. This privilege can only be waived by the person concerned, in writing. Absent such a waiver or unless one of the exceptions in R.C. 742.41(E) applies, the Fund should not disclose the information.

■ Appellants further argue that the trial court could have fashioned a protective order that would allow the Fund to contact the benefits recipients who would be potential class members, without disclosing the information to appellants. Such a plan might be viable or even desirable. However, the trial court exercised its discretion and refused to allow any discovery of the information. Though we may favor some other resolution of discovery issues, we can only overturn the trial court if it abused its discretion. We cannot say that the trial court abused its discretion in this matter. Accordingly, appellants' second assignment of error is overruled.

### B. First Assignment of Error—Class Certification

Appellants' first assignment of error argues that the trial court improperly denied class certification. The trial court determined that because appellants could not discover the names of the potential class members, they could not show that the potential class fulfilled the requirements of Civ.R. 23(A).

We review a trial court's determination of whether a class action may be maintained under an abuse-of-discretion standard. See *Marks v. C.P. Chem. Co.* (1987), 31 Ohio St.3d 200, 31 OBR 398, 509 N.E.2d 1249, syllabus. In the case at bar, the trial court determined that appellants could not make a sufficient showing that the potential class met one of the essential prerequisites to maintaining a class action, that "the class is so numerous that joinder of all members is impracticable." Civ.R. 23(A)(1). This ruling was founded on the trial court's decision to prohibit discovery of other benefit recipients' personal information. Based on our prior holding on that issue, we cannot say that the trial court abused its discretion in denying class certification. Appellants' first assignment of error is overruled.

### C. Third Assignment of Error

Appellants argue in their third assignment of error that the trial court improperly granted summary judgment on their claim under Section 1983 in favor of the Fund and the Fund officials. Appellants contend that they have sufficiently stated a violation of Section 1983 to survive summary judgment. They also assert that the trial court improperly found that the Fund officials, sued in their individual capacities, were entitled to qualified immunity to suit under Section 1983. Appellants further argue that summary judgment was improper as to their claims for attorney fees under Section 1988, Title 42, U.S.Code.

1. *Section 1983 claims.*

Pursuant to Civ.R. 56(C), summary judgment is proper if:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 274. Appellate review of a lower court's entry of summary judgment is *de novo,* applying the same standard used by the trial court. *McKay v. Cutlip* (1992), 80 Ohio App.3d 487, 491, 609 N.E.2d 1272, 1274–1275.

Section 1983 states:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.   * * *"

Our first inquiry is whether a suit under Section 1983 may be maintained against a person or entity.   Cf. *Mt. Healthy City Bd. of Edn. v. Doyle* (1977), 429 U.S. 274, 280, 97 S.Ct. 568, 572–573, 50 L.Ed.2d 471, 479 (courts should address issue of whether a state is immune to suit under Eleventh Amendment before addressing other issues).   We begin our analysis by considering whether the Fund and the Fund officials are "persons" for purposes of Section 1983.   We then turn to the question of whether the Fund officials, in their individual capacity, have qualified immunity to suit under Section 1983.

■■■■   a.   *The Fund.* Suits under Section 1983 may only be maintained against "persons."   The United States Supreme Court has held that a State is not a "person" under Section 1983 and is therefore not subject to suit for damages. *Will v. Michigan Dept. of State Police* (1989), 491 U.S. 58, 64, 109 S.Ct. 2304, 2308–2309, 105 L.Ed.2d 45, 53.   This immunity extends to state entities that are "arms of the state."   *Id.* at 70, 109 S.Ct. at 2312, 105 L.Ed.2d at 57; *Harman v. Ohio Dept. of Corr.* (1991), 74 Ohio App.3d 703, 705, 600 N.E.2d 314, 315–316.   A state entity is an "arm of the state," for purposes of Section 1983, if it would meet the definition of an "arm of the state" under an Eleventh Amendment immunity analysis.   *Will,* 491 U.S. at 70, 109 S.Ct. at 2312, 105 L.Ed.2d at 57; *Harman,* 74 Ohio App.3d at 705, 600 N.E.2d at 315.   Therefore, if the Fund is an "arm of the state," it is immune from appellants' suit under Section 1983.

■■■   In determining whether a state entity is an arm of the state, we use three primary factors.[2]   The first, and decidedly most important, is whether a judgment obtained against the entity will be paid out of the state treasury. *Estate of Ritter v. Univ. of Michigan* (C.A.6, 1988), 851 F.2d 846, 850.   The second factor is "the nature of the entity created by state law."   *Mt. Healthy,* 429 U.S. at 280, 97 S.Ct. at 572, 50 L.Ed.2d at 479.   The third factor is the extent of state control over the entity.   See *Hess v. Port Auth. Trans–Hudson Corp.* (1994), 513 U.S. 30, 47–48, 115 S.Ct. 394, 404–405, 130 L.Ed.2d 245, 260.

---

**2.**   A number of different factors have been suggested, including a nine-part test adopted by the Sixth Circuit.   See *Hall v. Med. College of Ohio at Toledo* (C.A.6, 1984), 742 F.2d 299, 302. However, these three factors may be distilled from the United States Supreme Court's analysis in *Mt. Healthy,* 429 U.S. at 280, 97 S.Ct. at 572–573, 50 L.Ed.2d at 479–480, where the court considered whether school districts in Ohio were "arms of the state" for purposes of the Eleventh Amendment.

Based on these three factors, we conclude that the Fund is an "arm of the state." The operation of the Fund is set out in detail in R.C. 742.63. The Fund is administered by a board of nine trustees whose membership is prescribed in R.C. 742.61 and 742.03; the board's powers are set forth in R.C. 742.61 and 742.10; and R.C. 742 .04 governs the election of the trustees. Though the state does not exert complete control over the Fund, two of the trustees are state officials, and a third trustee is appointed by the governor. And, perhaps most persuasive in our analysis, the Fund's primary source of revenue is the state. R.C. 742.61. As a result, judgments obtained against the Fund will be paid from the state's coffers. Therefore, the Fund is an "arm of the state" and is immune to appellants' Section 1983 claim. The trial court correctly granted summary judgment on this issue.

*b. The Fund officials in their official capacities.* Appellants have also sued the Fund's officials for damages in their official capacity. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself." (Citation omitted.) *Will,* 491 U.S. at 71, 109 S.Ct. at 2312, 105 L.Ed.2d at 58. Therefore, a state official cannot be sued for damages under Section 1983 in his or her official capacity, because he or she is not a "person" under Section 1983. *Id.* To the extent that appellants seek damages from the Fund officials in their official capacities, the Fund officials are not "persons" for purposes of Section 1983 and therefore not liable for damages. Summary judgment was proper.

*c. The Fund officials in their individual capacities.* Plaintiffs may maintain suits under Section 1983 for money damages against a state official in his or her individual capacity, even though the acts which give rise to the suit were committed while in his or her "official" capacity. *Hafer v. Melo* (1991), 502 U.S. 21, 31, 112 S.Ct. 358, 364–365, 116 L.Ed.2d 301, 313. However, the state official may be entitled to qualified immunity from suit. *Brodie v. Summit Cty. Children Servs. Bd.* (1990), 51 Ohio St.3d 112, 115, 554 N.E.2d 1301, 1304–1305. In Ohio, the courts apply a three-part test: "whether the official's action was taken within the scope of his or her authority; whether the actions consisted of duties involving the exercise of discretion and judgment; and whether the individual actions were made in good faith." *Id.* at 116, 554 N.E.2d at 1306. "Qualified immunity may not be asserted as a defense to an action alleging the failure of a public official to perform ministerial acts." *Id.* at paragraph three of the syllabus.

We find that the trial court erroneously held that the Fund officials were entitled to qualified immunity. A ministerial act may be defined as an act

that a person is legally obligated to perform, having no discretion in its performance. See *In re Seltzer* (1993), 67 Ohio St.3d 220, 223–224, 616 N.E.2d 1108, 1111. Appellants' complaint alleges that they have been damaged by the failure of the Fund officials to act under *Roseman.* The parties dispute whether and in what amount the Fund must pay survivors benefits to appellants retroactively.[3] However, the crux of the issue, for purposes of qualified immunity, is whether appellants have alleged that the Fund officials have failed to perform a duty that they are legally bound to perform. Appellants have alleged that the Fund officials are bound by law to retroactively pay survivors benefits to appellants. If the Fund officials are in fact found to have such a duty, then its performance is ministerial. Therefore, the Fund officials are not entitled to qualified immunity.

However, we must affirm the judgment of the trial court if any valid grounds are found on review to support it. See *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306, 309. We note that "Section 1983 does not encompass official conduct that violates only state law; rather, the statute is limited to deprivations of federal constitutional and statutory rights." *Id.* In *Roseman,* the Ohio Supreme Court found that R.C. 742.63(H) violated the Equal Protection Clauses of the Ohio and United States Constitutions. *Roseman,* 66 Ohio St.3d 443, 613 N.E.2d 574, at syllabus. However, the deprivation of which appellants complain is that the Fund officials have refused to obey the mandate of *Roseman.* Appellants' claim is grounded completely in an alleged violation of state law, not a deprivation of equal protection. Because appellants' allegations do not state a cognizable claim under Section 1983 against the Fund officials in their individual capacities, appellants have no remedy at law under Section 1983.

2. *Attorney fees.*

Appellants sought an award of attorney fees under Section 1988, Title 42, U.S.Code. Section 1988 allows attorney fees to be awarded to a "prevailing party" in an action under Section 1983. *Gibney v. Toledo Bd. of Edn.* (1988), 40 Ohio St.3d 152, 158, 532 N.E.2d 1300, 1306. However, "when no relief can be awarded pursuant to § 1983, no attorney's fees can be awarded under § 1988." *Natl. Private Truck Council, Inc. v. Oklahoma Tax Comm.* (1995), 515 U.S. 582, 592, 115 S.Ct. 2351, 2357, 132 L.Ed.2d 509, 519. Summary judgment was properly granted.

Accordingly, appellants' third assignment of error is overruled.

---

3. All parties agree that the central issue of this action—the extent to which the Fund must apply *Roseman* retroactively—is not before us.

### III

All of appellants' assignment of errors are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and SLABY, J., concur.