OPINION
Defendant-Appellants, Footbridge Capital, LLC ("Footbridge") and John Howe ("Howe"), appeal from a Union County Common Pleas Court judgment granting Plaintiff-Appellee's, G. Rand Smith Co., L.P.A. ("Smith"), motion to compel the deposition of Footbridge and Howe's attorney. Footbridge and Howe assert that deposing their attorney violates the attorney-client privilege and that the privilege has not been waived. Because Smith has not made a showing that the information claimed is necessary for its defense that Footbridge and Howe failed to mitigate their damages and that it could not be obtained from other sources, we find that the attorney-client privilege applies.
Facts and procedural history pertinent to this appeal are as follows. Howe is the managing member of Footbridge, an investment fund that provides loans in a variety of commercial transactions. G. Rand Smith, an attorney employed by Smith, was providing legal services to American Mortgage Solutions, Inc. ("AMS") at the time it sought a loan from Footbridge. To secure the loan from Footbridge, AMS assigned to it a portfolio of sixteen mortgages. However, Footbridge indicated that the loan would not be approved unless additional security was provided. In response, AMS also assigned to Footbridge a promissory note from Polytech Custom Sheet and Pellet, Inc. ("Polytech") for an amount in excess of one million dollars.
Thereafter, AMS defaulted on the loan, and due to his familiarity with the assigned mortgages, Smith was retained by Footbridge to assist them in liquidating the portfolio. Once retained, Smith allegedly failed to disclose to Footbridge that several of the assigned mortgages were essentially worthless and were tied up in litigation due to actions taken by AMS. Additionally, G. Rand Smith did not disclose that he was a part owner and creditor of Polytech and had knowledge that Polytech had filed for bankruptcy, creating an alleged conflict of interest between he and Footbridge. While G. Rand Smith filed a proof of claim in the bankruptcy court on behalf of himself he did not do so on behalf of Footbridge. Upon learning of this failure to disclose and potential conflict of interest, Howe terminated Smith's employment with Footbridge and transferred the remaining mortgages to an unaffiliated attorney, Stephen Jones ("Jones"), in order to continue their liquidation.
Subsequently, Smith filed a complaint for unpaid attorney's fees in the Union County Common Pleas Court against Footbridge and Howe. In response, with Jones acting as their attorney, Footbridge and Howe countered with a claim of malpractice against Smith based upon G. Rand Smith's alleged failure to disclose and his conflict of interest. As part of its discovery, Smith filed a notice to depose Jones. Jones asserted the attorney-client privilege, claiming that it barred Smith's request. Smith then moved to compel the deposition, claiming that the privilege had been impliedly waived by the affirmative acts of Footbridge and Howe. Included in the motion to compel was a request that Jones bring to the deposition all documented and recorded communications between he and Howe, Footbridge, or any related entities. The trial court granted the motion but limited the deposition to issues surrounding whether Footbridge and Howe mitigated their damages; however, the court proceeded to grant the entirety of Smith's request concerning the documents and communications Jones should bring to the deposition. From this decision, Footbridge and Howe appeal and present one assignment of error for our review.
 Assignment of Error I The trial court erred in finding that Appellants Footbridge Capital and Howe waived their attorney-client privilege with their counsel Stephen D. Jones and in sustaining Appellee Smith's motion to compel Mr. Jones' deposition.
Within their sole assignment of error, Footbridge and Howe claim that the attorney-client privilege bars the trial court's decision to grant Smith's motion to compel the deposition of Jones. As an initial matter, we note that a trial court has broad discretion in regulating discovery, which we will not disturb unless the trial court abuses that discretion.[1] An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable.[2]
When applying an abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court.[3]
The attorney-client privilege is the cornerstone upon which the attorney-client relationship is formed. The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interest in the observance of law and administration."[4] Moreover, the attorney-client privilege gives clients the right to refuse to disclose and to prevent others from disclosing confidential communications made between the attorney and client in the course of seeking or rendering legal advice.[5] While this privilege is not absolute, it is to remain inviolate unless it is clearly waived.[6] "Communications made by a client to his attorney, with a view to professional advice or assistance, are privileged; and courts will not require nor permit them to be divulged by the attorney, without the consent of his client, whose privilege it is."[7]
Notwithstanding, in certain limited situations, a waiver of the attorney-client privilege can be implied by the conduct of the one asserting it. To determine whether the privilege has been impliedly waived, several Ohio appellate districts, including the Second, Eighth, and Twelfth Districts,[8] have relied upon the tripartite test enumerated in Hearn v. Rhay.[9] According to Hearn, if (1) assertion of the privilege is the result of some affirmative act, such as filing suit, by the asserting party, and (2) through the affirmative action, the asserting party has placed the protected information at issue by making it relevant to the case, and (3) application of the privilege would deny the opposing party access to information vital to its defense, the court should find that the asserting party has impliedly waived the privilege through its own affirmative conduct.[10] Because we agree that theHearn approach is best suited to preserve and address the complexities of the attorney-client privilege, we apply this approach in determining whether the attorney-client privilege has been waived herein.
Before we apply the Hearn test, it is necessary to understand the nature of the underlying action. Footbridge and Howe argue in their counterclaim that Smith committed malpractice by failing to disclose that the mortgages assigned to Footbridge by AMS were impaired and its relationship with and knowledge of the viability of Polytech. Footbridge claims this failure to disclose caused them damage because had the information been provided, Footbridge would not have made the loan to AMS. In order for Footbridge and Howe to succeed on their counterclaim, they must demonstrate that Smith owed a duty or obligation to them, that there was a breach of that duty or obligation by a failure to conform to the standard of care required by law, and that there is a causal connection between the conduct complained of and the resulting damage or loss.[11] As part of its defense to the counterclaim, Smith argues that Footbridge and Howe did not mitigate their damages.
In applying the Hearn test to these facts, we must first resolve whether assertion of the privilege is the result of some affirmative act taken by the asserting party. Obviously, under the first factor of the test, the assertion of the attorney-client privilege is the result of an affirmative act on the part of Footbridge and Howe: their filing of a malpractice counter-claim alleging Smith's failure to disclose and conflict of interest.[12]
Under the second prong of the test, we must determine whether, through this affirmative action, the asserting party has placed the protected information at issue by making it relevant to the case. By filing their counterclaim, Footbridge and Howe have made the question of whether they mitigated their damages caused by Smith's alleged malpractice relevant. Consequently, questions surrounding what steps were taken subsequent to Footbridge's dismissal of Smith are directly at issue. In other words, the malpractice claim, countered by Smith's defense of failure to mitigate damages, makes the actions taken regarding the remaining mortgages and the costs Footbridge incurred after Smith's dismissal relevant to the case.
Finally, pursuant to Hearn, we must decide whether application of the privilege would deny the opposing party access to information vital to its defense. If the application of the attorney-client privilege would deny Smith access to information vital to its defense, we should find that Footbridge and Howe impliedly waived the privilege through their affirmative conduct. "Vital information" necessarily implies that the information is unavailable from any other source.[13]
Smith avers that there are several "vital" issues that would remain undiscoverable if Jones was not deposed. Namely, Smith claims that without Jones' deposition it would not learn the facts surrounding what actions were taken regarding the remaining collateral securing Footbridge's loan to AMS, how much money Footbridge settled the remaining accounts for, whether Footbridge and Howe recouped amounts in foreclosure of the mortgages for minimal amounts with hopes to recoup any deficiencies in their malpractice claim against Smith, and what led Jones to the conclusion that certain assignments by AMS to Footbridge had been improperly recorded.
In their last assertion, Smith argues that Footbridge and Howe's counterclaim prays for damages, in part, based upon its negligence in handling the mortgages assigned to Footbridge by AMS. Specifically, Smith contends that Footbridge and Howe claim damages for the negligent filing of one of the assigned mortgages, thereby causing Jones to properly re-file it. However, after an independent review of their counterclaim and arguments before the trial court, we find that Footbridge and Howe's claim for malpractice is solely based upon Smith's alleged failure to disclose information regarding AMS and Polytech and its conflict of interest with Footbridge. Accordingly, any negligence in recording the mortgages provided by AMS as collateral for its loan from Footbridge is not relevant to the damages sought by Footbridge and Howe. Nonetheless, even if such information was necessary, Smith has not made a showing that a comparison of the recorded mortgages, which are public record, would not provide it with the reasons behind the subsequent recording and differences between them.
With regards to the remaining issues claimed to be undiscoverable without deposing Jones, Smith has made no showing that information relating thereto could not be obtained through other means. Notably, at the time a notice to depose Jones was filed, no witnesses had been deposed by Smith. Furthermore, when the motion to compel the deposition of Jones was filed, the only deposition that had been taken by Smith was of Footbridge and Howe's expert witness. While not dispositive of any issues on appeal, Smith's inaction is indicative of its failure to attempt finding information supporting its mitigation defense from sources other than Jones. Moreover, during Howe's deposition, Smith was provided detailed responses to questions asked about what steps have been taken with respect to the mortgage files that were transferred to Jones after Smith's dismissal. Howe was specifically questioned about five mortgages and what action Footbridge had taken to recoup the money lent to AMS. These mortgages were presumably those that were transferred to Jones, and Howe's responses provided Smith with the necessary information to deduce what actions were taken by Footbridge subsequent to its dismissal. Furthermore, anything potentially remaining unanswered by Howe's responses that would aid Smith in its mitigation defense could have been specifically inquired about during Howe's deposition. Therefore, questioning Jones about these mortgages would merely be cumulative to answers already provided by Howe or would relate to specific information that could have been inquired into during Howe's deposition.
At deposition, Howe was specifically questioned about a $827,063 figure contained in a letter written by Jones, which represented the outstanding amount AMS owed Footbridge and which is relevant to Smith's mitigation defense. Howe stated that he did not know how the amount was figured and was then asked what calculations were provided to Jones to reach the specific dollar amount. Howe further explained that he did not compute these figures and referenced his accountant and Footbridge's controller compliance officer. Howe explained that Footbridge likely has documentation accounting for the payments received and expenses incurred with respect to the loan to AMS that were apparently not contemplated by prior production requests made by Smith. Thereafter, the parties agreed to treat the inquiry as a formal request for production and resolved that these documents would be provided in response thereto. The following day, prior to receiving the documentation or seeking a deposition of other employees of Footbridge, the hearing on Smith's motion to compel was held.
Accordingly, we find the motion to compel to be premature because the supporting documentation or other employees of Footbridge could likely supply Smith with the information it needs regarding these figures and related issues and, as such, Smith did not make the requisite showing that the information could not be found without deposing Jones.
For these reasons, we find that the third prong of the Hearn test has not been established in this case. While Smith claims that the deposition of Jones is vital to its mitigation defense, it has not demonstrated that this information could not be obtained from any other source. Information necessary for Smith's defense could have been elicited during Howe's deposition, upon a review of supporting documentation subsequently provided by Footbridge, or by deposing additional employees of Footbridge. Accordingly, Smith has not shown that application of the attorney-client privilege would deny it access to information "vital" to its defense. As such, the trial court abused its discretion in finding otherwise,[14] and Footbridge and Howe's sole assignment of error is sustained.
Having found error prejudicial to the appellants herein, in the particulars assigned and argued, the judgments of the trial court are hereby reversed and remanded for further proceedings in accordance with this opinion.
Judgments reversed and cause remanded.
SHAW, P.J., and BRYANT, J., concur.
[1] State ex rel. Daggett v. Gessaman (1973), 34 Ohio St.2d 55, 57;Elston v. Bidlack (Sept. 29, 1999), Paulding App. No. 11-99-06, unreported; State ex rel. Shelton v. Firemen Policemen's Death BenefitFund (1997), 125 Ohio App.3d 559, 566; Radovanic v. Cossler (2000),140 Ohio App.3d 208, 213; Lightbody v. Rust (2000), 137 Ohio App.3d 658,663.
[2] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[3] Berk v. Matthews (1990), 52 Ohio St.3d 161, 169.
[4] Ward v. Graydon, Head, Ritchey (Dec. 3, 2001), Clermont App. No. CA2001-03-038, unreported, quoting Upjohn Co. v. United States (1981),449 U.S. 383, 389.
[5] Frank W. Schaefer, Inc. v. C.Garfield Mitchell Agency, Inc. (1992), 82 Ohio App.3d 322, 329.
[6] H D Steel Service, Inc. v. Weston, Hurd, Fallon, Paisley Howley (July 23, 1998), Cuyahoga App. No. 72758, unreported.
[7] Id., quoting King v. Barrett (1860), 11 Ohio St. 261, paragraph one of the syllabus.
[8] H D Steel Service, Inc. v. Weston, Hurd, Fallon, Paisley Howley (July 23, 1998), Cuyahoga App. No. 72758, unreported; Frank W.Schaefer, Inc., 82 Ohio App.3d at 331; Ward v. Graydon, Head Ritchey
(Dec. 3, 2001), Clermont App. No. CA2001-03-038, unreported.
[9] Hearn v. Rhay (E.D.Wash. 1975), 68 F.R.D. 574, 581.
[10] Hearn, 68 F.R.D. at 581.
[11] Vahila v. Hall (1997), 77 Ohio St.3d 421, syllabus.
[12] Cf. Ward v. Graydon, Head Ritchey (Dec. 3, 2001), Clermont App. No. CA2001-03-038, unreported.
[13] Id., citing Frontier Refining, Inc. v. Gorman-Rupp Co., Inc. (Feb. 13, 1998), Tenth Cir. No. 96-8014, unreported; H D SteelService, Inc. v. Weston, Hurd, Fallon, Paisley Howley (July 23, 1998), Cuyahoga App. No. 72758, unreported.
[14] H D Steel Service, Inc. v. Weston, Hurd, Fallon, Paisley Howley (July 23, 1998), Cuyahoga App. No. 72758, unreported.