OPINION
{¶ 1} In this case, Steven R. Martin appeals from the judgment of the Common Pleas Cour of Montgomery County overruling his Motion for Summary Judgment and sustaining a Motion fo Summary Judgment on behalf of Appellee, Vandalia-Butler City School District Board of Educatio ("Board"). *Page 2 
 {¶ 2} The record indicates that Martin entered into a two-year administrative contract with th Board on March 26, 2003 for the position of Human Resources Director. He performed the duties o this position until May 18, 2004, at which time the Board suspended Martin pursuant to its policy o administrative reductions in staff. Under this policy, the Board "reserve[d] the right to abolis positions in the District and to reduce the staff whenever reasons of decreased enrollment o students, return to duty of regular professional staff members after leaves of absence, suspension o schools or territorial changes affecting the District, change in financial conditions, or other goo cause warrant." (Pl.'s Mot. for Summ. J., Ex. A.) Superintendent of Schools, Christy Donnelly recommended Martin's suspension due to significant budget reductions for the 2004-2005 schoo year.
 {¶ 3} Martin filed a complaint against the Board challenging his suspension. According t Martin, the Board did not properly adopt a suspension policy pursuant to R.C. 3319.171, whic authorizes boards of education to suspend administrative personnel under their own policy becaus of financial conditions of the school district. Martin claimed that the Board had instead suspende him under R.C. 3319.17, which authorized reductions in the number of teachers and administrators but did not include "financial conditions" as an enumerated reason for such reductions prior t amendment in 2005. Therefore, Martin asserted that his suspension was illegal, resulting in a breac of contract. Furthermore, he claimed that his contract had automatically renewed and extended t July 31, 2007, because the Board's execution of the improper suspension was not a valid boar action non-renewing his contract, as required by law.
 {¶ 4} Both parties subsequently filed motions for summary judgment. On May 25, 2006, th trial court overruled Martin's Motion for Summary Judgment but sustained the motion of the Board *Page 3 
motion of the Board, finding that the school board did have a policy for the suspension o administrators in accordance with R.C. 3319.171, and that such policy complied with th requirements of R.C.3319.171(B)(2) and (B)(3) regarding the order of suspension of contracts an the restoration of suspended employees. It is from this decision that Martin appeals.
 I {¶ 5} In support of his appeal, Martin raises the following assignments of error:
 {¶ 6} I. "The lower court erred in that it did not sustain Plaintiff-Appellant's motion to strik portions of the Donnelly affidavit attached to Defendant's Motion for Summary Judgment."
 {¶ 7} II. "The trial court erred, as a matter of law, in sustaining Defendant-Appellee's Motio for Summary Judgment."
 {¶ 8} As an appellate court, our review of a trial court's decision on summary judgment is d novo, which means that "we apply the standards used by the trial court." Brinkman v. Dought (2000),140 Ohio App.3d 494, 497, 748 N.E.2d 116. A trial court will appropriately grant summar judgment where it finds "(1 ) that there is no genuine issue as to any material fact; (2) that the movin party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but on conclusion, and that conclusion is adverse to the party against whom the motion for summar judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46.
 {¶ 9} Upon review of the record, we find that Martin's assignments of error lack merit *Page 4 
Accordingly, the judgment of the trial court will be affirmed.
 II {¶ 10} Under his first assignment of error, Martin claims that the trial court failed to rule on hi motion to strike portions of the affidavit of Christy Donnelly, the Superintendent of Schools Specifically, Martin argues that the following statements made by Superintendent Donnelly contai legal conclusions inadmissible under Civ.R. 56(E):
 {¶ 11} "6. Pursuant to R.C. 3318.171 [sic], the Board of Education of the Vandalia-Butler Cit School District adopted its own personnel suspension policy."
 {¶ 12} "9. The Guidelines provided procedures for determining the order of suspension o contracts within the employment service areas affected as well as provisions regarding th restoration for employees whose contracts of employment are suspended under the policy if an when any positions become available."
 {¶ 13} This court has held that where a trial court fails to rule on a motion, we will presum that the motion was overruled. Bolling v.Marzocco (July 9, 1999), Montgomery App. No. 17456 1999 WL 961006, at *4 (citation omitted). Moreover, a trial court has broad discretion in regulatin discovery, and a reviewing court will not disturb this unless the trial court abuses its discretion. Stat ex rel. Shelton v. Firemen Policemen's Death Benefit Fund (1997), 125 Ohio App.3d 559, 566,70 N.E.2d 182. An abuse of discretion means that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 14} Here, we do not find that the statements made by Superintendent Donnelly an *Page 5 
inadmissible legal conclusions. Instead, both appear to be statements of fact based on the affiant' personal involvement in policy implementation. To assume that a superintendent of schools woul be aware of the statutory authorization for his or her district's personnel suspension policy is no unreasonable, nor is it unreasonable that the superintendent of schools would know what guideline such suspension policy entails. Therefore, we do not find that the failure to strike portions o Superintendent Donnelly's affidavit was an abuse of discretion. Accordingly, Martin's firs assignment of error is overruled.
 III {¶ 15} In his second assignment of error, Martin contends that the trial court erred i sustaining the Board's Motion for Summary Judgment. Martin first argues that the Board failed t adopt an administrative personnel suspension policy in accordance with R.C. 3319.171
Alternatively, Martin contends that, if a policy had been adopted under R.C. 3319.171, the Boar failed to comply with the provisions regarding the order of suspension of contracts and the restoratio of suspended employees, i.e., R.C. 3319.171(B)(2) and (B)(3). Based upon our review of the record we do not find there to be a genuine issue as to any material fact that would defeat summar judgment against Martin.
 {¶ 16} R.C. 3319.171 authorizes boards of education to "adopt an administrative personne suspension policy governing the suspension of any contract of employment entered into by a boar under section 3319.02
of the Revised Code.[1] If a board adopts a policy under this section, n contract entered into by a board under section 3319.02 of the Revised Code may be suspende *Page 6 
Revised Code may be suspended except pursuant to the policy. If a board does not adopt such policy, no such contract may be suspended by a board except pursuant to section 3319.17 of th Revised Code."
 {¶ 17} In other words, boards of education may adopt their own administrative personne suspension policy under R.C. 3319.171, or they may choose to suspend administrators pursuant t R.C. 3319.17. Where boards adopt their own policy, they may not suspend administrators unde R.C. 3319.17. Likewise, where boards have not adopted their own policy, they may only suspen administrators under R.C. 3319.17.
 {¶ 18} If boards of education choose to adopt a policy under R.C.3319.171, the policy mus include the following provisions:
 {¶ 19} "(B)(1) One or more reasons that a board may consider for suspending any contract o employment entered into under section 3319.02
of the Revised Code. A reason for such suspensio may include the financial conditions of the school district or educational service center.
 {¶ 20} "(B)(2) Procedures for determining the order of suspension of contracts within th employment service areas affected;
 {¶ 21} "(B)(3) Provisions requiring a right of restoration for employees whose contracts o employment are suspended under the policy if and when any positions become vacant or are create for which any of them are or become qualified."
 {¶ 22} As part of the Ohio Teacher Tenure Act of 1941, R.C. 3319.171 is remedial legislatio that must be construed in favor of teachers and administrators. Hastings et al., Ohio School La (2006-2007), 171, Section 9:1. However, when construing a statute in favor of one party, "a cour may not read into a statute a result that the language does not reasonably imply." Evans-Marshall v *Page 7 
reasonably imply." Evans-Marshall v. Bd. of Ed. of Tipp City ExemptedVillage School Dist., Miam App. No. 03CA2, 2003-Ohio-4977, at ?35.
 {¶ 23} In the present action, the Board adopted a policy on May 1, 2003 entitled "Reduction i Staff." This policy states, "It is the responsibility of the Board of Education to provide the staf necessary for the implementation of the educational program of the District and the operation of th schools and to do so efficiently and economically.
 {¶ 24} "The Board reserves the right to abolish positions in the District and to reduce the sta whenever reasons of decreased enrollment of students, return to duty of regular professional staf members after leaves of absence, suspension of schools or territorial changes affecting the Distric change in financial conditions, or other good cause warrant.
 {¶ 25} "The Superintendent shall develop administrative guidelines for the reduction of staf which shall be in accordance with the terms of negotiated, collectively-bargained agreement, du process, and the best interests of the District.
 {¶ 26} "Staff exempted from the negotiated, collectively-bargained agreement shall be entitle to the same benefits."
 {¶ 27} Below the provisions of this policy is an annotation citing R.C. 3319.17 as a lega reference.
 {¶ 28} Martin initially claims that the Board failed to adopt its administrative personne suspension policy pursuant to R.C. 3319.171. According to Martin, because the Board's polic addresses reductions in "staff," he interprets it to include more employees than those covered b R.C. 3319.02. Martin argues that R.C. 3319.171 was intended to provide boards of education wit the authority to suspend only administrative contracts under 3319.02; therefore, the scope of th Board's policy is too broad. Furthermore, Martin asserts that the policy's reference to R.C. 3319.1 *Page 8 
policy's reference to R.C. 3319.17 demonstrates that it was adopted in accordance with R.C 3319.17, not R.C. 3319.171. Martin supports this argument with the deposition testimony o Superintendent Donnelly inBeck v. Vandalia-Butler School Dist. Bd. of Ed., a matter currentl pending in the Montgomery Court of Common Pleas, No. 2003 CV 09269. There, Superintenden Donnelly testified that the Board's reduction in staff policy was made pursuant to 3319.17, and tha she was unaware whether the Board had a policy specific to R.C. 3319.171.
 {¶ 29} The Board makes several responses to Martin's claims. First, the Board argues tha R.C. 3319.171 does not prohibit its suspension policy from applying to other staff members as we as administrators. The Board also claims that the mere reference to R.C. 3319.17 beneath the polic provisions does not preclude a court from finding that it was adopted in accordance with R.C 3319.171. According to the Board, it drafted its policy based on a standardized form, and it is no uncommon for there to be mistakes on these formulaic policies. Therefore, the reference to R.C 3319.17, instead of R.C. 3319.171, is simply a typographical error. Similarly, the Board claims tha Superintendent Donnelly's confusion as to the numbers of the statutes is not dispositive of whethe the suspension policy had been adopted under R.C.3319.171. Instead, the Board argues that it actions are more relevant.
 {¶ 30} Based on the evidence before this court, we find that the Board could only hav adopted its administrative personnel suspension policy in accordance with R.C. 3319.171. Whil those who draft and implement policies such as this one are responsible for being aware of an correcting misleading language, these inconsistencies do not create genuine issues of material fac under the circumstances of the present case. At the time the Board adopted its suspension policy *Page 9 
adopted its suspension policy, R.C. 3319.17 did not allow for suspension of administrators (o teachers) because of "financial reasons." This justification was added to the statutory requirement by amendment in 2005. However, R.C. 3319.171 has included "the financial conditions of the schoo district" as a reason for administrator suspensions from the time it was enacted in 2000. This cour must assume that Superintendent Donnelly and the Board were aware that the law did not perm suspensions for "financial reasons" under R.C. 3319.17 when they drafted their suspension policy Therefore, their action appears to be a valid attempt under R.C. 3319.171 to include this addition justification among the ways that the school district could address budgetary concerns. Accordingly we find that the trial court did not err in concluding from the evidence that the policy was adopte pursuant to R.C. 3319.171, and properly included "financial reasons" as a basis for suspension.
 {¶ 31} Martin's alternative argument is that the Board's administrative personnel suspensio policy violates the provisions of 3319.171(B)(2) and (B)(3). First, R.C. 3319.171 (B)(2) requires that school board's suspension policy provide "[procedures for determining the order of suspension o contracts within the employment service areas affected." To address this requirement, the Boar adopted the following guidelines for its policy:
 {¶ 32} "When it becomes necessary to reduce administrators pursuant to Board Policy GCPA the following guidelines will be in effect.
 {¶ 33} "1. The Superintendent will determine whether resignations or retirements ca accomplish the necessary reduction [sic]
 {¶ 34} "2. If additional reductions are necessary, or if reductions in positions other than thos where resignations or retirements have occurred, the Superintendent will recommend jo *Page 10 
recommend job abolishment and/or contract suspension of employees to the Board of Education taking into consideration the following matters:
 {¶ 35} "A. The needs of the District;
 {¶ 36} "B. Administrator certification;
 {¶ 37} "C. Demonstrated proficiency in duty assignments;
 {¶ 38} "D. Length of administrative experience in the District. [sic]
 {¶ 39} "E. Length of continuous service in the District."
 {¶ 40} Martin claims that the superintendent's authority under the policy to recommen contract suspensions after weighing the five listed factors is more subjective than R.C 3319.171(B)(2) permits. According to Martin, the Board's policy grants the superintendent and th school board the power to suspend administrators on a case-by-case basis, whereas the statut prescribes procedures that should be objective and allow for a "sameness in outcome" each tim they are applied. Martin further argues that the Board's suspension policy fails to comply with R.C3319.171(B)(2) because it does not delineate service areas, which Martin asserts is essential t determining an actual order of suspension. To support his argument, Martin cites the Mad Rive Local School District's administrative suspension policy. The Mad River policy lists 20 employmen service areas, ranging from Assistant Superintendents to the Supervisor of Transportation, an provides that "[t]he Superintendent shall recommend suspension of contracts to the Board withi each active employment service area, giving first preference to administrators who have greate continuous service." Martin suggests that this policy exemplifies a school board suspension policy i compliance with R.C.3319.171(B)(2), because its provisions establish an actual order of suspensio based on seniority within a limited, defined class of employees per employment service areas. *Page 11 
areas.
 {¶ 41} The trial court found that the Board's policy sufficiently satisfies the statutory provisio regarding the order of suspension. The court also held that the language of the statute does no require that a policy "delineate service areas and/or develop separate procedures for determining th order of suspension in each service area so long as there is a procedure for determining the order o suspension in the affected service area." (Decision and Entry at 4.) We agree with the trial court' conclusion.
 {¶ 42} When interpreting a statute, courts must consider the legislative intent in enacting th statute. State v. S.R. (1992),63 Ohio St.3d 590, 594, 589 N.E.2d 1319 (citation omitted). Court determine legislative intent by looking to the language in the statute and the purpose to b accomplished. Id. at 594-95 (citation omitted). By permitting boards of education to enact their ow administrative personnel suspension policy, R.C. 3319.171 provides boards with greater flexibility t exercise their professional judgment when making necessary adjustments concerning th administrative personnel in their district. Part of this flexibility is encompassed in section (B)(1) where the statute authorizes school boards to suspend administrators when they determine that th financial conditions of their district deem it necessary. Likewise, section (B)(2) allows for professiona judgment and flexibility by requiring that each board's suspension policy includesprocedures fo determining the order of suspension of contracts as opposed to an actual order of suspension.
 {¶ 43} Furthermore, R.C. 3319.171(B)(2) does not mandate that each policy delineat employment service areas. Such a requirement might be necessary if the statute cal led for separat procedures for determining administrative suspensions within each employment service are affected. However, this is too narrow an interpretation of R.C. 3319.171(B)(2) as it is presentl *Page 12 
it is presently written. As indicated by the Mad River suspension policy, the same procedure can b used for all service areas designated by a school district, making their delineation in the polic arbitrary. Determining what employment service area(s) will be affected by administrativ suspensions is within the discretion of the school board.
 {¶ 44} We find that the Board's suspension policy complies with R.C.3319.171(B)(2). Whe the Board determines that a change in the financial conditions of the district warrant a reduction in it administrative personnel, the policy authorizes the superintendent to initially consider whether resignation or retirement can satisfy the reduction. When this is not possible, the policy sets out procedure that can be applied to all employment service areas, in which the superintendent makes recommendation of contract suspension based on five objective criteria: the needs of the Distric administrator certification; demonstrated proficiency in duty assignments; length of administrativ experience in the District; and length of continuous service in the District. Just as the procedure se out in the Mad River policy will be the same when applied to each employment service area, th Board's procedure for determining the order of suspensions will be the same regardless of th service area affected.
 {¶ 45} Unlike Martin, we do not interpret R.C. 3319.171(B)(2) to require each school boar policy to set out a stringent order of the suspension of administrative contracts within eac employment service area identified in the district. This undermines professional judgment an appears contrary to the nature of the statute. Accordingly, the trial court did not err in finding that th Board's administrative personnel suspension policy complies with R.C. 3319.171(B)(2).
 {¶ 46} Martin also argues that the Board's suspension policy fails to comply with R.C *Page 13 3319.171(B)(3). This section provides that an administrative personnel suspension policy sha include "[provisions requiring a right of restoration for employees whose contracts of employmen are suspended under the policy if and when any positions become vacant or are created for whic any of them are or become qualified."
 {¶ 47} The Board's policy includes the following provisions addressing an administrator's righ of restoration upon the suspension of his or her contract:
 {¶ 48} "3. If an administrator whose contract is suspended or non-renewed as the result of reduction in force holds a continuing teaching contract in the District, the Superintendent will assig administrator to a teaching position, in accordance with the administrator's certification.
 {¶ 49} "4. Administrators whose contracts are suspended as the result of a reduction in forc will have recall rights for up to two (2) years from the date of the reduction.
 {¶ 50} "A. If during such two (2) year period, the administrator's prior position is re established, or if a vacancy occurs in such position, the administrator will be recalled. Recalls will b made in the reverse order of reduction.
 {¶ 51} "B. If a vacancy occurs during such two (2) year period in a position for which th administrator holds the appropriate certification/licensure, but in which the administrator has no worked in the District, the administrator will be considered, along with other applicants, for th vacancy."
 {¶ 52} According to Martin, the Board's policy does not address administrators who hold job where a certificate or license is not required. This argument, however, does not preclude us from finding that the policy complies with R.C. 3319.171(B)(3).
 {¶ 53} R.C. 3319.171(B)(3) states that a school board's suspension policy must includ *Page 14 
include provisions requiring a right of restoration "if and when anypositions become vacant or ar created for which any of them are orbecome qualified." (Emphasis added.) The trial cour reasonably concluded from the evidence that the Board's policy included automatic recall of suspended administrator in two instances: (1 ) where the administrator holds a teaching certificate, h or she will be assigned to a teaching position; and (2) where the administrator's former position is re established or becomes vacant, he or she will be recalled in reverse order of reduction. The statut calls for recall when any positions become available in which the administrator is qualified o becomes qualified. Thus, regardless of whether an administrator holds a certificate or license, th Board's policy provides for automatic recall if that administrator's former position becomes available Additionally, if the administrator is licensed to teach, this qualifies him or her for another means o automatic recall should a teaching position become vacant or be created. Therefore, reasonabl minds could come to but one conclusion, and that conclusion is that these two circumstances fo automatic recall in the Board's policy satisfy the statute's requirements. Thus, the trial court correctl found that the Board's administrative personnel suspension policy complies with R.C3319.171(B)(3).
 {¶ 54} Martin's final issue under his second assignment of error is whether the suspension o his contract is void where the Board's policy violated the provisions of R.C. 3319.171. Because w have found that the Board has adopted a policy that complies with the provisions of R.C.3319.171 Martin's fourth issue is moot.
 {¶ 55} Martin's first and second assignments of error are overruled. Accordingly, the judgmen of the trial court is affirmed. Wolff, P.J., and Grady, J., concur.
Wolff, P.J., and Grady, J., concur.
Copies mailed to:
Larry A. Smith
Edward J. Dowd/Dawn M. Frick
Hon. Michael Tucker
[1] R.C. 3319.02 pertains to the contract rights of superintendents, assistant superintendents, principals, assistant principals and other administrators. *Page 1